**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Michael M. MINTZ and Paul Silvers, Defendants–Appellants, Cross–Appellees.**

**Nos. 92–3387, 92–3388 and 92–3420.**

United States Court of Appeals, Tenth Circuit.

Feb. 22, 1994.

Marilyn M. Trubey, Branch Chief, Federal Public Defender's Office (Charles D. Anderson, Federal Public Defender, with her on the briefs), Topeka, Kansas, for Defendant–Appellant/Cross–Appellee Michael M. Mintz.

F.G. Manzanares, Topeka, Kansas, for Defendant–Appellant/Cross–Appellee Paul Silvers.

Gregory G. Hough, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with him on the briefs), Topeka, Kansas, for Plaintiff–Appellee/Cross–Appellant.

Before TACHA, SETH, and ALDISERT *, Circuit Judges.

SETH, Circuit Judge.

Appellants/Cross–Appellees Michael M. Mintz and Paul Silvers were indicted in the United States District Court for the Southern District of Florida on three counts: conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963, importation of marijuana in violation of 21 U.S.C. §§ 952(a), and conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846 ("Florida conspiracy"). These charges arise from the importation and sale of 632.9 pounds of Jamaican marijuana to an undercover agent in Florida. On September 11, 1991, both Mintz and Silvers pled guilty to

---

* Honorable Ruggero J. Aldisert, United States Circuit Judge for the Third Circuit, sitting by designation.

Count 1, conspiracy to import, and the other charges were dismissed with prejudice. Subsequently, both Mintz and Silvers were sentenced to 121 months imprisonment with five years supervised release and were fined.

Also on September 11, 1991, Defendants were indicted in the United States District Court for the District of Kansas on two counts: conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846 ("Kansas conspiracy"), and possession with intent to distribute more than 1,000 plants in violation of 21 U.S.C. § 841(a)(1). These charges arise from the harvesting and sale of marijuana from fields in Kansas.

Defendants moved to have both Kansas counts dismissed on double jeopardy grounds, claiming that their activities in Florida and those in Kansas were part of one continuing conspiracy. The United States District Court for the District of Kansas dismissed Count 1, conspiracy to possess with intent to distribute, but not Count 2, possession of marijuana with intent to distribute. Defendants appeal the court's refusal to dismiss Count 2. The Government cross-appeals, challenging the court's dismissal of Count 1. The Government also argues that Defendants improperly appealed the refusal to dismiss Count 2 and therefore seeks to have the appeal dismissed. This argument is without merit as this interlocutory appeal was properly brought pursuant to *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). *See also United States v. Holland,* 956 F.2d 990 (10th Cir.1992) (Jeopardy attached to conspiracy count which had been dismissed with prejudice.). As to the remaining issues on appeal, we affirm the district court.

Mintz testified that his primary goal in selling both the Kansas and Jamaican marijuana was to raise money in order to repurchase his failing cosmetic business. Silvers, who had made deliveries for Mintz' cosmetics business, participated in both the Kansas and Florida endeavors. However, a factual dispute exists as to whether the ultimate plan was a joint venture to mix the two types of marijuana for sale in New York.

The conduct giving rise to the Kansas charges involved a plan to harvest "wild"

marijuana in Kansas which would be sold in New York. In the Kansas indictment the Government contends that the conspiracy lasted from July 1990 to September 1990. The Defendants do not dispute this.

In August of 1990, Silvers introduced Mintz to Sam Walker who then arranged a meeting in New York between them and Sandra Wolfe to discuss the possibility of harvesting "wild" marijuana in Kansas. Mintz and Silvers eventually flew to Kansas and set up an operation to harvest and sell the Kansas marijuana. Mintz used a credit card to finance the plan which included renting a house to process the marijuana, and flying others in from New York and Florida to steal, process, and eventually transport the marijuana to New York. Mintz claims that approximately 300 pounds of marijuana were transported to New York. The proceeds from the sales were used to pay the people who harvested the marijuana, as a payment towards repurchasing the cosmetic business, living expenses, and according to Silvers' affidavit to "make and [sic] advanced payment to a person who was going to transport the marijuana from Jamaica to Florida." R.O.A., Vol. IV., No. 403.

Additionally, Defendants were involved in the transfer of higher quality marijuana from Jamaica into Florida which was also to be sold in New York. The Government claims that the Florida conspiracy occurred October 6 to October 25, 1990, but Defendants claim that plans for the importation of Jamaican marijuana began as early as May or June of 1990.

Mintz had previously dealt with contacts in Jamaica in order to import marijuana. Once Mintz decided he needed to raise money to save his business in the summer of 1990, he attempted to rekindle the relationship, but his contacts would not front the drugs without a payment. He was unable to work out an arrangement until October 1990 when the Drug Enforcement Administration ("DEA") was conducting an undercover investigation and John Craig put Mintz in touch with a contact, undercover DEA Special Agent Prevatt. After an initial meeting between Prevatt and Mintz, they then met with Silvers on

October 17, 1990 to discuss Prevatt's delivery of marijuana. Silvers later gave Prevatt $20,040 as an initial payment for the transportation of 4,000 pounds of marijuana from Jamaica. On October 25, 1990, Craig loaded 632.9 pounds of marijuana onto a boat in Jamaica manned by four undercover agents. Mintz and Silvers were subsequently arrested.

Pursuant to the Florida plea agreement, Mintz assisted the DEA in two ongoing investigations. Mintz' bond was revoked when he "consummated a 750 pound marijuana transaction unbeknownst to law enforcement." Gov't. Brief at 9. Prior to the Florida sentencing on March 3, 1992, the Kansas United States Attorney's office had contacted the Florida United States Attorney's office about a Rule 20 transfer in order to consolidate the two cases. The two offices corresponded and Mintz offered two proffers seeking consolidation in Florida. However, nothing was ever finalized and due to Mintz' bond revocation, the final proffer was rejected and the two prosecutions proceeded independently of each other.

The first issue on appeal is whether the court erred in dismissing the Kansas conspiracy based on double jeopardy grounds due to the dismissal with prejudice of the Florida conspiracy. The second issue is whether double jeopardy bars the Kansas possession with intent to distribute charge based on the sentence given in Florida.

 The protection guaranteed by the Double Jeopardy Clause of the Constitution "applies both to successive punishments and to successive prosecutions for the same criminal offense." *United States v. Dixon,* — U.S. —, —, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993). We review the district court's legal conclusion regarding double jeopardy *de novo. United States v. Cardall,* 885 F.2d 656, 665 (10th Cir.1989). We review the underlying factual findings using the clearly erroneous standard. *United States v. Jones,* 816 F.2d 1483, 1486 (10th Cir.1987). The Defendants carry the burden of proving double jeopardy. *United States v. Raymer,* 941 F.2d 1031, 1037 (10th Cir.1991). The Defendants must prove "in fact and in law" that only one conspiracy existed in or-

der to prevail on their double jeopardy claim. *United States v. Daniels,* 857 F.2d 1392, 1394 (10th Cir.1988).

**Issue 1:**

 To determine if the two charges would violate the Double Jeopardy Clause, we apply the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Generally the *Blockburger* test "provides that offenses charged are identical in law and fact only if the facts alleged in one would sustain a conviction if offered in support of the other." *United States v. Puckett,* 692 F.2d 663, 667 (10th Cir.1982). In a double jeopardy analysis involving conspiracies, the court must determine whether the two transactions were interdependent and whether the Defendants were "united in a common unlawful goal or purpose." *United States v. Sasser,* 974 F.2d 1544, 1550 (10th Cir.1992) (quoting *United States v. Daily,* 921 F.2d 994, 1007 (10th Cir.1990)).

 The district court found that the Kansas transactions and the Florida transactions "are so interdependent as to constitute one conspiracy." *United States v. Mintz,* 804 F.Supp. 229, 230 (D.Kan.1992). Although the court stated that under a pure *Blockburger* test the conspiracies were not one offense, the court relied on *Sasser* and *Daily* to find one conspiracy.

In its Order, the court mentioned *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which required a second step of analysis, the "same conduct" test, in determining double jeopardy problems. However, the Supreme Court recently overruled *Grady* in *Dixon,* stating that *Grady* lacked constitutional roots and was impractical to apply. *Dixon,* — U.S. at — – —, 113 S.Ct. at 2863–64. We asked the parties to address *Dixon* at oral argument; however, we find that the overruling of *Grady* does not affect the district court's decision since the court did not rely on *Grady,* but rather followed the analysis of *Sasser,* which was unaffected by *Dixon.*

Defendants contend that the court acted properly in dismissing the Kansas conspiracy count because they proved the existence of

only one conspiracy through affidavits from Harold Borg (Silvers' attorney in Florida), Mintz and Silvers, and a deposition of Herb Cohen (Mintz' attorney in Florida). Furthermore, the testimony at a motions hearing of Sandra Wolfe, co-conspirator in Kansas, supports the one conspiracy theory. The Government contends that "[b]ecause the trial court's factual findings were clearly erroneous, its legal conclusion based thereon cannot stand." Gov't. Reply Brief at 1.

Defendants argue that Defendants' affidavits claiming one conspiracy were consistent with the evidence and that Mintz' final proffer made in anticipation of a Rule 20 transfer is not valid. Mintz denies the accuracy of the proffer, which he never completely read for accuracy, and points out that it was not until the third and final proffer, which Mintz related to his attorney Cohen while Cohen was discussing the case with the Kansas case agent, that the Kansas and Florida transactions were mentioned. Mintz declared in an affidavit, provided after the proffer was written, that "the Kansas marijuana was to be mixed with the Jamaica marijuana." R.O.A., Vol. 2, No. 125. Both Defendants' attorneys support the one conspiracy theory. Cohen supports Mintz' claim of one conspiracy in his deposition, but denies recalling any specific discussion concerning the mixing of the marijuanas, although Silvers' attorney Borg recalls a discussion among the four of them about the Kansas charges.

The Government counters that the Defendants' affidavits were self-serving and that other evidence contradicts them. Mintz' final proffer, written before his affidavit, stated that the activities "were to be separate deals, we were not going to mix the Kansas marijuana with the Jamaica marijuana." R.O.A., Vol. VII, No. 402, Def.Ex. 2 at 6. Furthermore, during the plea hearing in September 1991, no mention was made of the Kansas activities by the Assistant United States Attorney, Mintz, or Silvers.

The court determined that the proffers made by Mintz for a Rule 20 transfer did not enlighten the district court as to the existence of one conspiracy or two. The court intimated that the case agent dictated what was said in the final proffer and therefore it

was not reliable. Given the fact that Mintz claims he did not read the final proffer before signing it, even though his attorney claims nothing improper occurred pertaining to the proffer, the court did not err in its assessment of the evidence pertaining to the proffer.

According to Defendants, Sandra Wolfe's testimony at a motions hearing also supports a finding of one conspiracy. Wolfe stated at the hearing: "They told me they were going to take it [the Kansas marijuana] back to New York." When asked if they were going to mix it with higher quality marijuana, she replied, "Yes." R.O.A., Vol. 3 at 24. When asked, "Silvers and Mintz ... told you that they have connections with Jamaica?", she replied, "Yes, they did." *Id.* at 26.

However, the Government claims that Sandra Wolfe's testimony is unreliable due to a conflict between her and her attorney. The Government contends that the affidavit Wolfe later provided which stated the conspiracies were independent is more reliable. "I do not recall, and cannot now recall, any of my testimony before this Court...." Vol. 2, No. 201, Wolfe's Affidavit at 1. "I was in a state of stress-related blackout." *Id.* at 2. "The facts, as I know them, are as follows: ... I neither understood nor was I ever informed that marijuana plants harvested in Kansas were to be mixed with marijuana plants harvested or gathered from any other state or country." *Id.* at 3, 4.

The court found in its Order in response to the Government's Second Motion to Reconsider the Dismissal of Count 1, "serious credibility problems with defendant Wolfe. The court, however, did not rely primarily on Sandra Wolfe's testimony in granting the motion to dismiss." R.O.A., Vol. II, No. 212 at 1. The court relied on statements by Cohen, Borg, and the two Defendants,

"although the court acknowledges the self-serving nature of such evidence.

"The court cannot find solely by virtue of the affidavit of Sandra Wolfe, who is seeking leniency in treatment by the government, that she was not in fact truthful in her testimony before this court and in a previous meeting with counsel for several

of the defendants. On the other hand, the court cannot give great weight to her testimony.... [T]here is enough independent evidence with which to find that the two charged conspiracies were so interdependent as to constitute one overall conspiracy."

*Id.* at 1, 2.

The Government challenges this finding claiming that the court inappropriately ignored affidavits offered with a Motion to Reconsider the Court's Dismissal of Count 1 from the Florida prosecutor and the Kansas special agent stating that two conspiracies existed. The court found that communications between the Kansas United States Attorney's office and the Florida United States Attorney's office about a Rule 20 transfer were irrelevant to the determination that one conspiracy existed. "The issue is not whether the agent and United States Attorney think the acts in Florida and Kansas were separate conspiracies, but whether on the basis of all the evidence the two conspiracies were interdependent." R.O.A., Vol. 2, No. 190.

We find that the district court's findings are not clearly erroneous. The district court found that the ultimate goal was to mix the two types of marijuana for sale in New York and that the Kansas operation and the importation of Jamaican marijuana were interdependent. Although the evidence is not overwhelming that the Florida and Kansas transactions constitute one conspiracy, the evidence considered by the court supports this finding as there is insufficient evidence to prove otherwise.

Furthermore, the Government's main contention that because the two transactions involved different co-conspirators and occurred at different times, the activities constituted distinct and separate conspiracies is without merit. The court stated in its Order that "[i]t would not be unusual for a conspiracy spanning conduct in several states to take on additional members to help carry out a portion of the objectives of the conspiracy." *United States v. Mintz,* 804 F.Supp. at 231. See *Daily,* 921 F.2d at 1007–08 (guidelines for analyzing multiple conspiracies versus one conspiracy). Whether Wolfe knew the

precise details, the evidence shows that the core conspirators, Mintz and Silvers, coordinated the entire plan, hiring others to harvest marijuana in Kansas which would ultimately be mixed and sold in New York.

According to Defendants, the Florida plan started as early as May or June of 1990. The time frame alleged in the indictments do not reflect this. The Government places an ending date of September 1990 for the Kansas conspiracy and a very precise date of October 6, 1990 as the beginning of the Florida conspiracy. No evidence counters the Defendants' claim of an earlier starting date for the Florida conspiracy. Therefore, the time frame alleged in the Florida indictment is not crucial in determining the existence of one conspiracy.

We find that the district court did not err in dismissing Count 1 because the evidence supports a finding of one conspiracy. Since Defendants were indicted for the same conspiracy in Florida and this charge was dismissed with prejudice, to subject Defendants to a trial on the same charge in Kansas would violate the Double Jeopardy Clause of the Constitution.

**Issue 2:**

 Defendants contend that the punishment they received for the Florida conspiracy to import marijuana included the amount of marijuana gathered and sold in Kansas. Therefore, the Kansas possession charge should be dismissed on double jeopardy grounds protecting against multiple punishment for the same offense. Although Defendants were caught with only 632.9 pounds of marijuana which had been transported from Jamaica, they were sentenced for conspiring to import 4,000 pounds.

Contrary to Defendants' claim that the "Florida sentence includes all conduct relevant to the conspiracy, including the quantity that is the subject of the charges in Kansas," Mintz Brief at 9, the district court found that the Pre–Sentence Investigation Report prepared in Florida and the transcript from the hearing do not support the contention that the 4,000 pounds included the Kansas marijuana. The 4,000 pounds represents the amount that Mintz, Silvers, and the under-

cover agent negotiated to transport from Jamaica. Therefore, the evidence shows that the Defendants have not been punished for the possession of Kansas marijuana.

We affirm the district court's refusal to dismiss Count 2, possession of marijuana.

AFFIRMED.