**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JORGE RODRIGUEZ-MORENO,

Defendant-Appellant.

No. 99-5120

(D.C. No. 97-CR-65)
(N.D. Okla.)

**ORDER AND JUDGMENT** *

Before **BRORBY** , **McKAY** , and **BRISCOE** , Circuit Judges.

Defendant Jorge Rodriguez-Moreno appeals his conviction in Oklahoma

federal district court for conspiracy to possess with intent to distribute in excess

of 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846. Rodriguez-

Moreno argues that his conviction was barred by the double jeopardy clause of

the Fifth Amendment and that the doctrine of collateral estoppel barred the

government from presenting evidence of his prior acts. We exercise jurisdiction

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

pursuant to 28 U.S.C. § 1291 and affirm.

## I.

*The Texas indictment and trial*

On June 2, 1997, Rodriguez-Moreno was charged in Texas federal district court with conspiracy to knowingly and intentionally possess with intent to distribute more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846, and with knowingly and intentionally possessing with intent to distribute more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 841, for the period of April 15, 1997, to May 13, 1997. Mario Garcia-Saldivar, Nasario Castillo-Salazar, Jose Peralez-Munoz, Juan Castaneda-Mendoza, Arturo Vega Trejo, and Carlos Alfonso Cabrera were also charged. The complaint was based on the storage of marijuana at H&S Ropa Usada, a secondhand clothing store in McAllen, Texas. In July 1997, a jury acquitted Rodriguez-Moreno of all charges.

The trial testimony established that in April 1997, Anthony Dominguez, a special agent with the United States Drug Enforcement Administration (DEA) in McAllen, received information from a confidential informant that marijuana was being stored at Ropa Usada. On the evening of April 30, 1997, Dominguez and other agents went to the store and Hector Salinas, Sr., the owner, consented to a search of the store. The agents found 263 pounds of marijuana in a living area in the back of the building and arrested Salinas and his son, Hector Salinas, Jr.

2

Both Salinas Sr. and Salinas Jr. agreed to cooperate with the agents and they were released the next morning.

On May 1, 1997, Salinas Sr. asked the agents to return to the store because there were some boxes that he suspected contained marijuana. The agents found the boxes contained 1581.5 pounds of marijuana. A few days later, Salinas Sr. made a DEA-monitored telephone call to Garcia-Saldivar to discuss delivery of the marijuana. On May 13, 1997, Salinas Sr. told Garcia-Saldivar that he did not have a way to transport the marijuana. Salinas Sr. went to a convenience store to meet Garcia-Saldivar and left the store with Garcia-Saldivar's brother. They went to a ranch owned by Garcia-Saldivar, and Salinas Sr. was provided a vehicle to transport the marijuana. Salinas Sr. drove the truck to the McAllen DEA office, where agents loaded it with 400 pounds of marijuana. After the truck was loaded, Salinas Sr. drove it to the Wonder Burger to meet Rodriguez-Moreno. The truck then was driven by Cabrera from the Wonder Burger to the Central de Abastos, a produce terminal, where Cabrera was arrested, along with Trejo, Castillo-Salazar, and Peralez-Munoz. Rodriguez-Moreno was arrested at the Wonder Burger.

DEA agents went to Ropa Usada later that evening after receiving information that another load of marijuana was to be delivered and found 1,127 pounds of marijuana in a pickup parked outside the store. Keys to the truck were

3

found in the possession of Castaneda-Mendoza.

*The Oklahoma indictment and trial*

On February 5, 1999, Rodriguez-Moreno, Garcia-Saldivar, Cruz Herrera, Ruben Torres, and Arturo Chapa, were charged in Oklahoma federal court in a fourth superseding indictment with conspiracy to possess with intent to distribute in excess of 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846. The indictment charged that from May 1996 to April 29, 1997, Garcia-Saldivar operated an international marijuana smuggling operation based in McAllen, Texas, and communicated with co-conspirators to transport the marijuana out of state to Atlanta, Georgia; Chicago, Illinois; and Tulsa, Oklahoma. Rodriguez-Moreno moved to dismiss the indictment on double jeopardy grounds, which was denied. On February 18, 1999, a jury convicted Rodriguez-Moreno of conspiracy, and Rodriguez-Moreno was sentenced to 240 months of imprisonment and ten years of supervised release.

The evidence presented at trial established that Rogelio Escalona, who worked at Garcia's Upholstery in McAllen, was involved in the transportation of marijuana. Terrall Raper owned Fletcher Trucking Company in Tulsa, Oklahoma, and provided Escalona with the trucks to transport the marijuana. In the spring or summer of 1996, Rodriguez-Moreno went to Escalona's home in

4

McAllen to arrange to move marijuana upstate for Garcia-Saldivar. Escalona met with Rodriguez-Moreno and Garcia-Saldivar three weeks to a month later to discuss transportation. In January or February 1997, Rodriguez-Moreno and Escalona arranged transportation of 1,000 pounds of marijuana to Atlanta, Georgia. Escalona did not know the origination of the marijuana, but knew that Rodriguez-Moreno and another individual delivered it to Roy Garza's home in a McAllen suburb. Escalona, Herrera, and Garza loaded the marijuana onto a truck at Garza's house and the truck was driven to Straightways Trucking Company. The marijuana was then loaded onto Mike Canfield's truck from Fletcher Trucking and was delivered to Atlanta.

In March or April 1997, Rodriguez-Moreno and Escalona arranged the transportation of 2,200 pounds of marijuana to Chicago, Illinois. Escalona did not know the origination of the marijuana, but it was loaded onto Canfield's Fletcher truck at Ropa Usada, and was transported by George Pettigrew to Chicago. Escalona, Garcia-Saldivar, Pettigrew, Herrera, Salinas Sr., Salinas Jr., and others were present during the loading.

In April 1997, Chapa drove a Fletcher truck to an empty lot in McAllen where the truck was loaded with 2,500 pounds of marijuana destined for Tulsa, Oklahoma. Pettigrew was again the driver of the truck. Canfield took possession of the truck from Pettigrew between Oklahoma City and Tulsa, and was arrested

5

while driving the truck to Tulsa.

II.

*Double jeopardy*

Rodriguez-Moreno argues the Oklahoma prosecution against him was barred by the double jeopardy clause of the Fifth Amendment. "We review the factual findings underlying the defendant's double jeopardy claim for clear error." United States v. Rodriguez-Aguirre, 73 F.3d 1023, 1024-25 (10th Cir. 1996). "The district court's ultimate determination regarding double jeopardy is, however, a question of law we review de novo." Id. at 1025.

The double jeopardy clause protects against "'successive punishments and [] successive prosecutions for the same criminal offense.'" United States v. Mintz, 16 F.3d 1101, 1104 (10th Cir. 1994) (quoting United States v. Dixon, 509 U.S. 688, 696 (1993)). "[I]f two charges of conspiracy are in fact based on a defendant's participation in a single conspiracy, the former jeopardy clause bars the second prosecution." United States v. Daniels, 857 F.2d 1392, 1393 (10th Cir. 1988). Rodriguez-Moreno has the burden of proving double jeopardy applies and "must prove 'in fact and in law' that only one conspiracy existed in order to prevail on [his] double jeopardy claim." Mintz, 16 F.3d at 1104 (quoting Daniels, 857 F.2d at 1394).

6

Rodriguez-Moreno asks this court to apply a totality of the circumstances test to his claim of double jeopardy. However, this circuit continues to follow the "same evidence" test set forth in Blockburger v. United States, 284 U.S. 299 (1932), to determine whether two conspiracy prosecutions violate the double jeopardy clause. Mintz, 16 F.3d at 1104. "We are bound by the precedents of prior panels [of this court] absent en banc reconsideration or a superseding contrary decision by the Supreme Court." United States v. Jones, 194 F.3d 1178, 1186 (10th Cir. 1999).

The Blockburger "same evidence" test "provides that offenses charged are identical in law and fact only if the facts alleged in one would sustain a conviction if offered in support of the other." Mintz, 16 F.3d at 1104 (internal quotation omitted). The district court applied the "same evidence" test in concluding that the Oklahoma prosecution was not barred by double jeopardy:

> Although two of the witnesses in the McAllen, Texas trial would most likely be called by the prosecution in the Oklahoma case, this is where the commonality among the evidence ends. The Oklahoma indictment alleges overt acts which were not alleged in the Texas indictment, and it does not appear to this Court that evidence introduced to support the allegations in Texas would suffice to support the Oklahoma charges. Thus, without deciding whether there existed one or two conspiracies, it is clear that the same evidence would not be sufficient to support both inquiries.

Appellant's App. I at 93.

"In a double jeopardy analysis involving conspiracies, the court must

7

determine whether the two transactions were interdependent and whether the Defendants were united in a common unlawful goal or purpose." Mintz, 16 F.3d at 1104 (internal quotation omitted). "[I]nterdependence involves a determination of whether the activities of [the] alleged co-conspirators in one aspect of the charged scheme were necessary or advantageous to the success of the activities of co-conspirators in another aspect of the charged scheme, or the success of the venture as a whole." United States v. Sasser, 974 F.2d 1544, 1550 (10th Cir. 1992) (internal quotation omitted). Rodriguez-Moreno has not shown that the Texas conspiracy and the Oklahoma conspiracy were interdependent.

In concluding that the Texas and Oklahoma conspiracies were not interdependent and therefore did not violate double jeopardy, the district court stated:

> The evidence introduced in this case indicates that the actors working to perpetuate the conspiracies had no information as to what was transpiring beyond their own criminal objective. Even law enforcement officials in both Texas and Oklahoma claimed to have little or no knowledge of related criminal activity occurring outside their respective jurisdictions. No evidence was presented in the Texas trial to indicate that the defendants were running a drug conspiracy which was intended to culminate with a mass distribution scheme which would stretch across the United States into Oklahoma, Illinois, and Georgia. The very DEA agent working on bringing down the Texas conspiracy testified in the hearing on this issue that he had no knowledge of facts surrounding the Oklahoma distribution conspiracy, or of the role of the Fletcher Trucking Company in carrying out the distribution. The DEA agent testified that the Texas investigation focused solely on events occurring in McAllen, Texas. Though he believed the marijuana stored at the HS Ropa Usada was

being prepared for distribution because of the massive quantities involved, at the time of the Texas indictment he had received no information regarding a nationwide distribution scheme.

While it may be true that the overlap in the two indictments indicates that the Oklahoma case encompasses elements of the Texas case, the conspiracies were not interdependent. Although both conspiracies to some extent functioned within the city of McAllen, Texas, the conspiracy alleged in the Oklahoma indictment is of massive proportions, detailing a distribution ring reaching across the United States and involving larger quantities of marijuana than were at issue in the Texas case. The actors in the two conspiracies did not know of one another's existence or identity, and there were only two defendants in common between the two cases, one of whom was alleged to be the mastermind of both conspiracies. This Court finds that the two conspiracies, though related, were separate and distinct, and the prosecution of the Defendant in the Northern District of Oklahoma does not violate his 5th Amendment right against double jeopardy.

Appellant's App. I. at 98-99.

Rodriguez-Moreno asserts that "[i]n the [Oklahoma] indictment and prosecution, the government alleged and showed no conduct by [Rodriguez-Moreno] that 'had not been completed at the time he was indicted in' Texas." Appellant's Br. at 40. However, the evidence does not show that the conspiracies were interrelated. The alleged Texas conspiracy involved the storage and planned transportation of marijuana from Ropa Usada, with no evidence of planned nationwide transport. The Oklahoma conspiracy involved a different set of participants and the transportation of marijuana out of state. The fact that Ropa Usada was used in both conspiracies does not establish an interdependence between the conspiracies. Based on the record before us, we agree with the

9

district court's analysis and conclude that the Oklahoma prosecution was not barred by double jeopardy.

*Collateral Estoppel*

Rodriguez-Moreno argues that the doctrine of collateral estoppel barred the government from presenting evidence of the Texas conspiracy at his Oklahoma trial. The district court allowed Dominguez and Cabrera to testify about Rodriguez-Moreno's acts in Texas to show his state of mind, pursuant to Federal Rule of Evidence 404(b). The record does not indicate that Rodriguez-Moreno objected to the testimony at trial. A party must object timely and properly to preserve an alleged error for appeal. United States v. Herndon, 982 F.2d 1411, 1414 (10th Cir. 1992). Failure to so object "constitutes waiver of the issue unless there is plain error resulting in manifest injustice." Id. at 1414-15. We conclude that the district court's admission of the evidence was not plain error.

"The federal doctrine of collateral estoppel stands for the principle that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" United States v. Gallardo-Mendez, 150 F.3d 1240, 1242 (10th Cir. 1998) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)). A prior acquittal does not bar the government from presenting evidence of that conduct at

10

a later trial under Rule 404(b).  Rule 404(b) provides that similar act evidence is relevant if the jury can reasonably conclude that the act occurred and that the defendant was the actor.    Dowling v. United States  , 493 U.S. 342, 348 (1990).  As the Supreme Court has noted, a second jury might    *reasonably conclude*   that the evidence is true, even if the first jury did not believe    *beyond a reasonable doubt* that the defendant committed the crimes charged.    See id. at 348-49.   Even if the Texas jury did not find the evidence proved beyond a reasonable doubt that Rodriguez-Moreno was involved in the alleged conspiracy, that finding does not prevent a second jury from reasonably concluding that the evidence showed Rodriguez-Moreno was involved.  The doctrine of collateral estoppel did not bar the government from presenting evidence of the Texas acts in the Oklahoma trial to show Rodriguez-Moreno's state of mind under Rule 404(b).

Rodriguez-Moreno's conviction is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

11