**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4763**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EDWARD DENNIS JONES,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, Senior District Judge. (6:14-cr-00015-NKM-1)

Argued: March 23, 2017                                    Decided: June 1, 2017

Before MOTZ, THACKER, and HARRIS, Circuit Judges.

Reversed and remanded by published opinion. Judge Thacker wrote the opinion, in which Judge Motz and Judge Harris joined.

**ARGUED:** Abram John Pafford, PAFFORD LAW FIRM, PLLC, Lynchburg, Virginia, for Appellant. Erin Marie Harrigan Kulpa, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** John P. Fishwick, Jr., United States Attorney, Craig J. Jacobsen, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

THACKER, Circuit Judge:

On October 10, 2012, Edward Jones ("Appellant") pled guilty to a one count information in the Eastern District of Virginia alleging conspiracy to possess with intent to distribute cocaine. Per the information to which Appellant pled guilty, the Government alleged that from July 2012 to August 22, 2012, Appellant, along with two other people, conspired to purchase 17 kilograms of cocaine from a Drug Enforcement Agency Confidential Informant ("CI") in Lynchburg, Virginia. Thereafter, on July 24, 2014, Appellant was indicted in the Western District of Virginia for, among other offenses, conspiracy to possess with intent to distribute cocaine. In that conspiracy, the Government alleged that Appellant along with others -- including the same two people involved in the conspiracy to which he had previously pled guilty in the Eastern District of Virginia -- operated a vast drug trafficking organization in the Lynchburg, Virginia area from 1998 through 2012.

Appellant moved to dismiss the Western District of Virginia indictment on double jeopardy grounds. The district court denied the motion, reasoning that the longer time span and broader scope of the conspiracy alleged in the Western District of Virginia differentiated it from the conspiracy to which Appellant pled guilty in the Eastern District.

We reverse. In the context of successive conspiracy prosecutions, we look at the characteristics of the conspiracy -- substantive violation, personnel, location, time span, and nature and scope -- to determine whether double jeopardy bars a second conspiracy prosecution. *See United States v. Jarvis*, 7 F.3d 404, 410–11 (4th Cir. 1993). In this case, there is substantial if not complete overlap on each element of our double jeopardy analysis.

2

We therefore hold double jeopardy bars Appellant's follow-on prosecution in the Western District of Virginia for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846.

I.

A.

Kirkley Hotel Transaction

In July 2012, Alejandro Martinez-Mata contacted a CI in Richmond, Virginia, to arrange a purchase of multiple kilograms of cocaine. After preliminary negotiations over the phone, co-conspirators Martinez-Mata and Roberto Sanchez-Rogue met the CI in Danville, Virginia. They agreed to a sale of 17 kilograms of cocaine for $30,000 a kilogram ($510,000 total). Thereafter, on August 22, 2012, Martinez-Mata and Sanchez-Rogue met the CI at a restaurant in Lynchburg to consummate the deal. The CI and Sanchez-Rogue then proceeded to the Kirkley Hotel in Lynchburg, Virginia, where they met Appellant. All three walked into a hotel room where law enforcement officials were waiting and arrested Appellant and Sanchez-Rogue. Law enforcement officials confiscated $570,359.00 from Appellant (the "Kirkley Hotel Transaction").

On October 10, 2012, Appellant pled guilty in the Eastern District of Virginia to one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. As a result, Appellant was sentenced to 135 months in prison.

B.

The Lynchburg Conspiracy

On July 24, 2014, Appellant was indicted in the Western District of Virginia for, among other offenses, one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Appellant was indicted on the conspiracy count along with alleged co-conspirators Bryce Carter, Carlos Jackson, Jeroid Matthews, Tony Monroe, Tyrone Lewis, Lateef Jones, and Randall Falwell.

In connection with this conspiracy count, the Government alleged that Appellant "was the leader of [a] drug trafficking organization which was responsible for distributing more than 1,000 kilograms of cocaine in the Lynchburg area over the span of approximately 14 years" from 1998 until 2012. Sentencing Memorandum, *United States v. Carter*, No: 6-14-cr-00015 (W.D. Va. March 7, 2017), ECF No. 353, 2–3 (hereinafter Carter Sentencing Memorandum). As alleged, the Lynchburg drug trafficking organization obtained cocaine from wholesale suppliers outside of Lynchburg, brought the cocaine to the Lynchburg area, and sold it to customers there.

C.

On November 24, 2015, Appellant moved to dismiss the Western District of Virginia indictment on double jeopardy grounds. Appellant argued that he previously pled guilty in the Eastern District of Virginia to the same conspiracy for which he was indicted

4

in the Western District.[1]  The Government responded arguing that the conspiracies differed in co-conspirators, time span, and the nature and scope of the activities involved.

The district court agreed with the Government.  Although the district court recognized the alleged conspiracies involved some of the same co-conspirators working in the same area at the same time to violate the same statute, it nevertheless concluded that the Government had identified two distinct conspiracies because the Kirkley Hotel Transaction "concerned a single drug transaction for seventeen kilograms of cocaine" completed over the course of approximately one month whereas the Lynchburg Conspiracy "concern[ed] . . . over 1,000 kilograms of cocaine during a fourteen year period."  J.A. 183–84.[2]

This timely appeal followed.[3]

---

[1] The motion to dismiss also alleged prosecutorial vindictiveness but that is not part of this appeal.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[3] Although this appeal is interlocutory, we have jurisdiction over the appeal of the denial of a motion to dismiss an indictment on double jeopardy grounds pursuant to the "'collateral order' exception to the final-judgment rule." *Abney v. United States*, 431 U.S. 651, 657 (1977); *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949) ("We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.").

II.

This appeal presents a mixed question of law and fact which we review de novo. *See United States v. Ford*, 703 F.3d 708, 710 (4th Cir. 2013). Because the parties dispute the legal conclusion applied to the facts and not the facts themselves, this court reviews the district court's conclusion de novo. *See United States v. Goodine*, 400 F.3d 202, 206 (4th Cir. 2005).

III.

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" *Goodine*, 400 F.3d at 206 (quoting U.S. Const. amend. V). In the context of multiple conspiracies, the Double Jeopardy Clause prohibits dividing one overarching conspiracy into two separate counts. *See United States v. MacDougall*, 790 F.2d 1135, 1143–44 (4th Cir. 1986).

In order to assess whether there are two distinct conspiracies, we look to the entire record and apply a "totality of the circumstances" test. *See United States v. Ragins*, 840 F.2d 1184, 1188 (4th Cir. 1988). In doing so, we examine five factors:

> 1) time periods in which the alleged activities of the conspiracy occurred; 2) the statutory offenses charged in the indictments; 3) the places where the alleged activities occurred; 4) the persons acting as co-conspirators; and 5) the overt acts or any other descriptions of the offenses charged which indicate the nature and scope of the activities to be prosecuted.

*MacDougall*, 790 F.2d at 1144.

The defendant bears "[t]he initial burden of raising and pleading the double jeopardy claim." *Ragins*, 840 F.2d at 1191. To meet this burden, the defendant must point to "substantial overlaps in the two charged conspiracies." *United States v. McHan*, 966 F.2d

6

134, 138 (4th Cir. 1992). If the defendant has demonstrated the double jeopardy argument is non-frivolous, the burden then shifts to the government. *See id.* If the burden shifts, the government "must prove by a preponderance of the evidence that the indictments refer to two separate criminal agreements." *Ragins*, 840 F.2d at 1184.

## A.

In this case, the district court concluded that Appellant "made a non-frivolous showing concerning Double Jeopardy." J.A. 180. The Government has not challenged this conclusion. *See* Appellee's Br. 9. In *McHan*, we deemed a defendant's double jeopardy argument non-frivolous where a defendant demonstrated that both conspiracies involved the defendant and three others, purchasing marijuana in south Texas and bringing it to North Carolina, as well as the same statutory violation. *See* 966 F.2d at 138. Here, Appellant has shown that both conspiracies involved him and at least two other people in common, the distribution of cocaine in the Lynchburg area, the same substantive statute, and the same time period. Therefore, as in *McHan*, the substantial overlap here amounts to a non-frivolous argument. The burden shifts to the Government to demonstrate the existence of two separate and distinct conspiracies. *See id.*

## B.

Analyzing our double jeopardy five factor test, we conclude that in this case the Government has failed at every turn to prove separate and distinct conspiracies. To the contrary, the Government has identified one large conspiracy to traffic cocaine in the Lynchburg area.

7

But, before reaching the factors individually, we first highlight a glaring, fundamental flaw in the Government's legal analysis. The Government argues there were two conspiracies here because the Lynchburg Conspiracy "had an expanded scope, a broader reach, and a different object" than the Kirkley Hotel Transaction. Appellee's Br. 25. According to the Government, the different object was that the Lynchburg Conspiracy used many transactions on many occasions whereas the Kirkley Hotel Transaction was a "single transaction, on a single occasion." *Id.* at 23; *see id.* at 22. This argument misconstrues our double jeopardy precedent.

In the context of double jeopardy, we look to the *degree of overlap* not the *degree of similarity* to determine whether two charges are in reality a single offense. *See, e.g.*, *MacDougall*, 790 F.2d at 1148; *Ragins*, 840 F.2d at 1190–91; *McHan*, 966 F.2d at 138–39. Indeed, the government could always separate a smaller piece from the larger conspiracy and that smaller piece would look dissimilar to the large piece. And that is what the Government has attempted to do here. Because the Lynchburg Conspiracy's scope, reach, and object completely overlapped with the Kirkley Hotel Transaction's scope, reach, and object, the Government has simply split one large conspiracy into a smaller and larger piece rather than identify two separate conspiracies. This is precisely what the Double Jeopardy Clause prohibits. The Double Jeopardy Clause cannot be avoided through artful pleading or "the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown v. Ohio*, 432 U.S. 161, 169 (1977).

8

1.

Substantive Offense, Time Period, and Geographic Scope

a.

In this case, both the information in the Eastern District of Virginia and the indictment in the Western District of Virginia alleged Appellant violated 21 U.S.C. § 846. *See* J.A. 21–22, 59. Thus, there is no dispute that Appellant committed the same substantive offense.

b.

Moreover, the alleged conspiracies occurred during the same time. The Kirkley Hotel Transaction lasted approximately one month, from July 2012 to August 22, 2012. Significantly, the Lynchburg Conspiracy indictment in the Western District of Virginia "span[ned] 14 years, from September 1998 to August 2012," inclusive of the Kirkley Hotel Transaction. Appellee's Br. 14; *see* J.A. 21. Therefore, the time in which the Lynchburg Conspiracy operated "completely embraced the time period covered" by the Kirkley Hotel Transaction. *Jarvis*, 7 F.3d at 411.

c.

Likewise, the Lynchburg Conspiracy's geographic reach encompassed the entire area involved in the Kirkley Hotel Transaction. *See United States v. Hoyte*, 51 F.3d 1239, 1246 (4th Cir. 1995). According to the Government, the Lynchburg Conspiracy operated "primarily in the region around Lynchburg, Virginia, and extended into areas within the Eastern District of Virginia." Appellee's Br. 15. The Kirkley Hotel Transaction took place in Lynchburg with some communications reaching into the Eastern District of Virginia.

9

Thus, the substantive offense, time span, and geographic area factors weigh heavily in favor of a double jeopardy violation.

2.

Co-conspirators and Nature and Scope of Conspiracy

The Government's arguments fair no better with respect to the two remaining factors relevant to our double jeopardy analysis. This court will not allow the "government to subject an accused to repeated prosecutions for what is in reality the same criminal conspiracy, simply by selecting a different set of overt acts." *Ragins*, 840 F.2d at 1188. To determine the overlap on the remaining factors, we must conduct a "full study of the indictments and evidence." *MacDougall*, 790 F.2d at 1144 (internal quotation marks omitted).

a.

Here, a full study of the Government's case reveals a serious and substantial overlap as to co-conspirators in this case. First, the Lynchburg Conspiracy used at least three of the four people identified in the Kirkley Hotel Transaction -- Appellant, Martinez-Mata, and Sanchez-Rogue. *See* J.A. 61; Appellee's Br. 15–16 ("Four individual were involved in the [Kirkley Hotel Transaction]: Jones, Martinez-Mata, Sanchez-Rogue and a confidential informant . . . . Martinez-Mata and Sanchez-Rogue were involved [with Jones] as co-conspirators in the [Lynchburg Conspiracy]."). Of note, the CI was the fourth person and the only identified difference in persons involved. But the Government created that difference. We give little weight to a difference the government itself manufactures.

Moreover, in addition to the four co-conspirators identified, per the Eastern District information, the Kirkley Hotel Transaction involved "others known and unknown" who conspired to distribute 17 kilograms of cocaine. J.A. 59. These "others known and unknown" were in all likelihood members of the Lynchburg Conspiracy. *Id.* Appellant was the leader of the Lynchburg Conspiracy. *See* J.A. 31. The Lynchburg Conspiracy had the ability to sell cocaine in amounts ranging from one gram to multiple ounces. If Appellant conspired with other people and purchased cocaine "with intent to distribute," then the people with which he would have necessarily conspired with were quite logically the members of the Lynchburg Conspiracy.

b.

Likewise, the Lynchburg Conspiracy was also the probable source of the $557,455 in cash that law enforcement seized during the Kirkley Hotel Transaction. *See* J.A. 62. The Government has "conservatively estimated" that, in the course of its existence, the Lynchburg Conspiracy trafficked in cocaine worth "at least $33 million dollars." Carter Sentencing Mem. at 3. Moreover, although at oral argument the Government noted Appellant was gainfully employed, it admitted he was certainly not making over $500,000 a year from such gainful employment and did not offer any plausible explanation where the money for the Kirkley Hotel Transaction could have come from other than the Lynchburg Conspiracy. *See* Oral Argument at 23:00-25:20, *United States v. Jones*, No. 15-4763 (4th Cir. argued March 23, 2017), http://coop.ca4.uscourts.gov/OAarchive/mp3/15-4763-20170323.mp3.

11

We do not leave our common sense at the courthouse door. When a leader of a drug trafficking network who traffics in millions of dollars of cocaine arrives with over $500,000 in cash to purchase cocaine, common sense indicates that money clearly came from his drug trafficking operations. Thus, it is not a leap for us to conclude that the money used to buy drugs in the Kirkley Hotel Transaction flowed from the Lynchburg Conspiracy. The Government -- which carries the burden to distinguish the Kirkley Hotel Transaction from the Lynchburg Conspiracy -- has offered no alternative explanation.

c.

Ultimately, the Government is left to hang its hat on what it says are important differences in the nature and scope of the alleged conspiracies, but its analysis in this regard is superficial. What the Government argues are differences are actually similarities. The Government posits that the Kirkley Hotel Transaction involved "negotiations between [Appellant] and some of his suppliers to exchange money for cocaine on a single occasion." Appellee's Br. 9. The Government attempts to contrast this with the Lynchburg Conspiracy which "involved over a decade of cocaine distribution organized by [Appellant] through a network of drug dealers focused selling [sic] cocaine to hundreds of customers in and around Lynchburg, Virginia." *Id.* But, the only way the Lynchburg Conspiracy was able to acquire and distribute cocaine "to hundreds of customers" was through countless individual transactions, like where Appellant "exchange[d] money for cocaine" in the Kirkley Hotel Transaction. *Id.* And, the reason Appellant purchased a large amount of cocaine in the Kirkley Hotel Transaction was to allow his "network of drug dealers" in the Lynchburg Conspiracy to continue "selling cocaine to hundreds of

12

customers." *Id.* The "single occasion" Kirkley Hotel Transaction was, in fact, wholly subsumed in the larger Lynchburg Conspiracy. *Id.*

Not only has the Government failed to distinguish the two conspiracies, but, the record amply demonstrates that based upon timing, the Eastern District Kirkley Hotel Transaction was part and parcel of the Lynchburg Conspiracy charged in the Western District. By summer 2012, the Government was closing in on the Lynchburg Conspiracy and disrupting its trafficking activities. From late spring to summer of 2012, the Government seized over $25,000 in cash from the Lynchburg Conspiracy; confiscated over 10 ounces of cocaine; made four controlled purchases; and arrested two co-conspirators. *See* Statement of Facts, *United States v. Lateef Jones*, No. 6:14-cr-00015 (W.D. Va. Dec. 29, 2014), ECF No. 128; *United States v. Jackson*, No. 6:14-cr-00015 (W.D. Va. March 31, 2015) ECF No. 194. In June 2012, one of the co-conspirators charged in the Western District indictment told a potential drug purchaser that he could not make a sale because "his supplier was in trouble and they were waiting for that situation to be resolved." Statement of Facts, *United States v. Lewis*, No. 6:14-cr-00015 (W.D. Va. Jan. 16, 2015), ECF No. 149.

In arguing its double jeopardy case, the Government ignores the anomaly of a drug organization in operation for 14 years suddenly taking a risk with "one large purchase" from a new and unknown supplier. Appellee's Br. 10. However, this anomaly can be readily explained when viewed in the context of the Lynchburg Conspiracy. With his drug supply in jeopardy and police close on his tail, Appellant needed a new source of cocaine. Therefore, Appellant's co-conspirator Martinez-Mata contacted a new drug supplier and

13

found that supply. Appellant willingly provided the money to make the purchase at the Kirkley Hotel to keep the Lynchburg Conspiracy afloat. Viewed through this lens, again the Kirkley Hotel Transaction was not a separate conspiracy but rather an act in furtherance of the large conspiracy charged in the Western District.

In fact, the Western District was investigating Jones for the full scope of the conspiracy which would have included the Kirkley Hotel Transaction, when Jones pled guilty. *See* Oral Argument at 20:40, *United States v. Jones*, No. 15-4763 (4th Cir. argued March 23, 2017), http://coop.ca4.uscourts.gov/OAarchive/mp3/15-4763-20170323.mp3 ("Q: When the Government in the Eastern District of Virginia entered into a plea agreement with Mr. Jones was the Government also investigating him for the full scope of the conspiracy in the Western District of Virginia?" A: "Yes. It was and that is something that was acknowledged at the sentencing."). In creating a plea in the Eastern District, the Government had Jones plead guilty to the small portion of the conspiracy that it could charge. The Western District then fashioned its indictment around the remaining part of the conspiracy. In the face of such a clear violation of double jeopardy, the government was left to argue before the district court:

> With regard to the double jeopardy argument, Your Honor, had [the Western District] charged this conspiracy first and then the Eastern District tried to charge their conspiracy, the defendant would have a valid point. I think his argument would have a lot of merit. That would be double jeopardy. But that's not what they are asking. They are asking the Court to dismiss a drug conspiracy that lasted 14 years, over the course of a thousand kilos or more will be shown in trial, involving different coconspirators and different sources of supply, because the defendant pled guilty to one attempted purchase of cocaine in the Eastern District of Virginia.

14

J.A. 147–48. This is without merit. The law is clear that it does not matter which indictment is returned first, and the government cannot avoid double jeopardy by splitting one large conspiracy into two. *See Brown*, 432 U.S. at 165–66.[4]

Indeed, we have already declared that double jeopardy bars a successive conspiracy prosecution in a materially indistinguishable situation. In *United States v. Jarvis*, a defendant was convicted of a conspiracy to possess with intent to distribute cocaine in the Southern District of Florida. *See* 7 F.3d 404, 407 (4th Cir. 1993). In that case, during a four day period in January 1990, Jarvis flew to Florida to purchase cocaine, arranged the purchase with undercover DEA agents, and made the purchase. As a result, Jarvis was convicted in the Southern District of Florida of conspiracy in violation of 21 U.S.C. § 846.

---

[4] The complete overlap in the nature and scope of the conspiracy and the Government's full knowledge of the conspiracy when Appellant was indicted in the Eastern District distinguish this case from *United States v. Cole*, 293 F.3d 153 (4th Cir. 2002). In that case, the defendant was charged with one conspiracy where the only overt acts were two small-scale, domestic sales of cocaine and a separate conspiracy that involved the mass importation of drugs from Panama, distribution of those drugs, money laundering, and violent acts including murder. The substantial differences in the overt acts demonstrated a clear difference in nature and scope of the conspiracies. Based on this distinction, in addition to differences in the other four elements of our totality of the circumstances analysis, we concluded the government had identified two distinct conspiracies. But, in this case, as illustrated above, the Government is unable to point to any distinction in the overt acts and nature and scope of the conspiracies. In addition, in *Cole*, the government was unaware of key facts in its second conspiracy prosecution when it charged the first conspiracy. *See* 293 F.3d at 162. Therefore, the court could not find the government had artificially divided one conspiracy into two -- the sine qua non of a double jeopardy violation in the conspiracy context. The same is not true here. The Government has acknowledged that it was aware of the entirety of the conspiracy when it charged Appellant in the Eastern District of Virginia. The Government then fashioned the two indictments at issue to enable two separate convictions for one large conspiracy -- the precise sin the Double Jeopardy Clause prohibits.

After that conviction, the Eastern District of Virginia charged Jarvis with an ongoing conspiracy from June 1988 to April 25, 1991, in which the conspirators purchased cocaine in Florida and smuggled it to the Eastern District of Virginia to be sold in violation of 21 U.S.C. § 846. There, we found, "within each of the five factors enunciated in *MacDougall* and *Ragins*, there is considerable similarity between the Florida prosecution and the Virginia prosecution." *Id.* at 411–12. Based on the similarity, we "conclude[d] that Jarvis's indictment on conspiracy charges in the Eastern District of Virginia was simply an attempt to reprosecute the defendant for an offense of which he already had been convicted in the Southern District of Florida." *Id.* at 412. The same is true here.

Here, as in *Jarvis*, the "Government selected a single overt act from the series and prosecuted it as a separate conspiracy." 7 F.3d at 412. Then, "the Government prosecuted [Appellant] again . . . this time attacking the entire conspiracy." *Id.* In this case, just as in *Jarvis*, the "series of overt acts charged in both" the Eastern and Western District of Virginia conspiracies "were bound together by a single agreement" to acquire and distribute cocaine. *Id.* And, just as in *Jarvis*, the government's attempt to re-prosecute Appellant violates the Double Jeopardy Clause.

In sum, although the Government alleged two conspiracies, it has clearly only identified one large scale conspiracy aimed at obtaining and distributing cocaine. The Government's position is not so much a principled legal argument as it is a post hoc rationalization for violating Appellant's constitutional rights.

16

## IV.

For the foregoing reasons, we reverse and remand.

*REVERSED AND REMANDED*