**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

GASPAR LEAL,

     Defendant - Appellant.

No. 18-2083

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:16-CR-03308-JB-2)**
_____

Jason Bowles of Bowles Law Firm, Albuquerque, New Mexico, for the Defendant – Appellant.

Jason Wisecup, Assistant U.S. Attorney (Fred Federichi, First Assistant U.S. Attorney with him on the brief), Albuquerque, New Mexico, for the Plaintiff – Appellee.
_____

Before **MATHESON**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

Gaspar Leal appeals from the district court's denial of his motion to dismiss the indictment. In his motion, he argued that the drug conspiracy charged in this case is the same conspiracy for which he was convicted in a previous case and that continued

prosecution would violate his double jeopardy rights. The district court found the conspiracies were not interdependent, the indictment therefore charged a separate offense, and double jeopardy did not apply. We affirm.

## I. BACKGROUND

### A. *Factual Background*

The facts in this section are drawn from the factual findings in the district court's order, which were based largely on the Government's pleadings, and which recounted Mr. Leal's conduct in two drug transactions: (1) the Tapia Deal and (2) the Carmona Deal. The parties do not dispute the facts underlying Mr. Leal's first conviction or the facts supporting the indictment he sought to dismiss.

### 1. Tapia Deal

In 2016, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") employed a confidential informant ("CI") to buy drugs in Albuquerque, New Mexico. An ATF agent told the CI to contact Mr. Leal.

On May 7, 2016, the CI went to Mr. Leal's home. While there, the CI told Mr. Leal he wished to make money buying and selling drugs and was interested in buying "an ounce or two" of methamphetamine or cocaine. ROA at 94.

On May 9, Mr. Leal referred the CI to a seller named "Pete." Mr. Leal said Pete could sell meth to the CI. The CI met Pete the following day, but Pete could sell him only 3.5 grams.

2

On May 12, after the CI told Mr. Leal he was disappointed with the amount of meth he had purchased from Pete, Mr. Leal sold the CI $40.00 worth of heroin and $30.00 worth of meth. Mr. Leal tried unsuccessfully to call other drug dealers to arrange a larger sale for the CI.

On June 8, Mr. Leal, then in jail on unrelated charges,[1] called the CI and gave him Bernadette Tapia's phone number. He said Ms. Tapia could sell drugs to the CI. Ms. Tapia's husband, Christopher Apodaca, who was in jail with Mr. Leal, had given her permission to sell drugs to the CI.

Later that day, the CI and an undercover ATF agent met with Ms. Tapia and her daughter, Candace Tapia, and bought two ounces of meth from them. The ATF deposited $60.00 into Mr. Leal's jail commissary account for arranging the deal.

2. **Carmona Deal**

On July 21, 2016, Mr. Leal called the CI from prison[2] and gave him Jose Casillas's phone number. When the CI contacted Mr. Casillas and asked to buy meth, Mr. Casillas offered to put the CI in touch with an unidentified woman. The next day, Erika Barraza texted the CI.

---

[1] The record does not indicate why Mr. Leal was in jail and does not suggest his incarceration was related to his contacts with the CI.

[2] The Government maintains that Mr. Leal was moved to a different correctional facility sometime between the first call he made to the CI on June 8 and his contact with the CI on July 21, 2016. In July 2016, Mr. Leal was incarcerated at the Central New Mexico Correctional Facility. It is not clear where he was incarcerated in June 2016.

On July 24, the CI called Ms. Barraza. She told him that her boyfriend, Luis Arreola-Palma, was in prison with Mr. Leal and had instructed her to contact him. The same day, Mr. Casillas conducted a conference telephone call with the CI, Mr. Leal, and Mr. Arreola-Palma. Mr. Arreola-Palma told the CI to contact his cousin, Daniel Carmona, who could sell an ounce of meth to the CI. Mr. Leal gave Mr. Carmona's telephone number to the CI and asked the CI to send him money. The CI called Mr. Carmona to arrange the transaction.

On July 25, the CI and an undercover ATF agent purchased more than 50 grams of methamphetamine from Mr. Carmona. On August 3, the CI and an undercover ATF agent again purchased more than 50 grams of methamphetamine from Mr. Carmona.

### B. *Procedural Background*

#### 1. **Tapia Indictment and Trial**

On July 12, 2016, a grand jury indicted Mr. Leal, Bernadette and Candace Tapia, and Brandon Candelaria (Candace Tapia's boyfriend) with (1) conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846; and (2) distribution of more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The indictment alleged Mr. Leal and the sellers conspired on or about June 8, 2016.

On December 20, 2017, a jury convicted Mr. Leal on the conspiracy count and acquitted him on the distribution count.

4

### 2. **Carmona Indictments**

On August 9, 2016, a grand jury indicted Mr. Leal, Mr. Carmona, and Mr. Arreola-Palma with (1) conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846; and (2) distributing 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

After the December 20, 2017 verdict in the Tapia case, the grand jury returned a superseding indictment in the Carmona case. It added another distribution count and charged Mr. Leal with a conspiracy beginning "on a date unknown, but not later than July 21, 2016, and continuing to on or about August 3, 2016." ROA at 100.

### 3. **Motion to Dismiss**

On March 6, 2018, Mr. Leal moved to dismiss the conspiracy count of the superseding indictment under Federal Rule of Criminal Procedure 12(b). He said the activity underlying the Tapia conviction and the Carmona superseding indictment was part of one larger conspiracy. He argued that trying him again for conspiracy would therefore violate double jeopardy.

"In essence," he said, "the first jury had to have found the necessary criminal agreement, formed on June 8, 2016, between Mr. Leal, the government informant, and others, to convict Mr. Leal in trial one." *Id.* at 62-63. Because the superseding indictment charged a conspiracy "beginning at a date unknown," Mr. Leal claimed both conspiracy charges stemmed from the same agreement, making them the same offense

5

for double jeopardy purposes. *Id.* at 58; *see also id.* at 63 ("No doubt, the criminal agreements in the indictment for trial one and for trial two, are the same.").[3]

## 4. **District Court Ruling**

The district court denied the motion. First, it said the transactions were not part of the same chain conspiracy because there was "no evidence that the members of the Tapia Deal and the Carmona Deal entered into a single conspiracy with each other. Leal is the only common member of those deals." *United States v. Leal*, 330 F. Supp. 3d 1257, 1278 (D.N.M. 2018). The transactions were "discrete and parallel." *Id.* at 1279. Second, the two deals were not part of a single wagon-wheel conspiracy because they were not interdependent—that is, "the success of one deal does not depend on the success of the other." *Id.*[4]

Mr. Leal timely appealed.

---

[3] Mr. Leal also asked for dismissal of the distribution count without prejudice so a new grand jury could consider it anew without hearing evidence of the conspiracy. Because we affirm the denial of dismissal of the conspiracy count, we do not need to address the distribution count.

[4] The district court also rejected the Government's argument that Mr. Leal's motion was unripe because the Government had not yet presented any evidence of his 2017 conviction. The Government does not contest that conclusion on appeal.

## II.  DISCUSSION

Mr. Leal argues the district court erred in finding the Tapia and Carmona deals lacked the requisite interdependence to make each of them part of one conspiracy. Proceeding to trial on the conspiracy count in the Carmona case would, he contends, violate double jeopardy because he would be prosecuted for the same conspiracy he was convicted of in the Tapia trial.  The following discussion shows that his argument fails under conspiracy law and the record.

### A.  *Jurisdiction and Standard of Review*

### 1.  Jurisdiction

We have appellate jurisdiction over this interlocutory appeal.  In *Abney v. United States*, 431 U.S. 651 (1977), the Supreme Court held that a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds falls within the collateral order exception to the final-judgment rule and is therefore immediately appealable under 28 U.S.C. § 1291.  *Id.* at 662.  The Court explained that holding otherwise would require the defendant to "endure the personal strain, public embarrassment, and expense of a criminal trial" that he asserts violates the Double Jeopardy Clause of the Fifth Amendment.  *Id.* at 661.

Here, as in *Abney*, "[t]here are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred by the Fifth Amendment's guarantee."  *Id.* at 659; *see also United States v. Tucker*, 745 F.3d 1054, 1064 (10th Cir. 2014) (stating "a Double Jeopardy Clause claim would be rendered

7

meaningless if motions to dismiss on double jeopardy grounds were not immediately reviewable"); *United States v. Perez-Herrera*, 86 F.3d 161, 163 (10th Cir. 1996) (exercising jurisdiction over an interlocutory appeal from a pretrial order in a double jeopardy case).

## 2. **Standard of Review**

"We generally review a district court's denial of a motion to dismiss a criminal indictment for abuse of discretion." *United States v. Berres*, 777 F.3d 1083, 1089 (10th Cir. 2015). "We review the factual findings underlying the defendant's double jeopardy claim for clear error." *United States v. Rodriguez-Aguirre*, 73 F.3d 1023, 1024-25 (10th Cir. 1996). "The district court's ultimate determination regarding double jeopardy is, however, a question of law we review de novo." *Id*. at 1025.

On whether there were one or two conspiracies, which Mr. Leal raised in his motion to dismiss, we review the district court's finding about interdependence for clear error. *See United States v. Mintz*, 16 F.3d 1101, 1106 (10th Cir. 1994) (concluding that district court's finding that "the ultimate goal [of the two conspiracies] was to mix the two types of marijuana for sale in New York and that [the two conspiracies] were interdependent" was not "clearly erroneous").

### B. *Legal Background*

## 1. **Conspiracy**

To prove a conspiracy, the government must show that "(1) two or more persons agreed to violate the law, (2) the defendant knew the essential objectives of

8

the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged co-conspirators were interdependent." *United States v. Pickel*, 863 F.3d 1240, 1251 (10th Cir. 2017) (brackets and quotations omitted). Because "the gist of the crime of conspiracy" is the agreement rather than the overt acts done in furtherance of the conspiracy, "the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects." *Braverman v. United States*, 317 U.S. 49, 53 (1942).

Although two or more people must agree to form a conspiracy, an informant cannot count toward that requirement: "[T]here can be no indictable conspiracy involving only the defendant and government agents or informers." *United States v. Barboa*, 777 F.2d 1420, 1422 (10th Cir. 1985). In short, "informers cannot be conspirators" and "cannot be considered parties to the illegal agreement." *United States v. Rodriguez*, 765 F.2d 1546, 1552 (11th Cir. 1985); *see also United States v. Villasenor*, 664 F.3d 673, 682 (7th Cir. 2011); *United States v. Hackley*, 662 F.3d 671, 679 (4th Cir. 2011).

We have described two conspiracy models: "chain" and "wagon-wheel." *See United States v. Evans*, 970 F.2d 663, 668 n.8 (10th Cir. 1992). In a chain conspiracy, "there is successive communication and cooperation in much the same way as with legitimate business operations between manufacturer and wholesaler, then wholesaler and retailer, and then retailer and consumer." *Id.* (quotations omitted). Most drug trafficking networks fall into this category and "involve loosely knit vertically-integrated

9

combinations." *Id.* (quoting *United States v. Brewer*, 630 F.2d 795, 799 (10th Cir. 1980)).

In a wagon-wheel conspiracy, "a single person or group (the 'hub') deal[s] individually with two or more other persons or groups (the 'spokes')." *Id.* (quotations and citation omitted). Individuals operating as independent spokes, connected through a center hub, are part of the same conspiracy only if they are enclosed by a "rim"—that is, "a unified and shared objective." *United States v. Carnagie*, 533 F.3d 1231, 1238 (10th Cir. 2008); *see also Kotteakos v. United States*, 328 U.S. 750, 755 (1946).[5]

2. **Double Jeopardy and Conspiracy**

The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy." U.S. Const. amend. V. It provides three protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Mr. Leal seeks the second of these protections.

---

[5] Mr. Leal states that "the circumstances of the conspiracy charges in the Tapia and Carmona cases do not even fit within a 'wagon-wheel' or 'chain' conspiracy theory." Aplt. Br. at 13. We do not need to rely on these models to resolve this case.

10

"The defendant bears the burden of proving a claim of double jeopardy."

*Rodriguez-Aguirre*, 73 F.3d at 1025.[6]  Moreover, "the burden of proof is on the defendant

to demonstrate that two conspiracies are the same for double jeopardy purposes."  *United*

*States v. Sasser*, 974 F.2d 1544, 1549 n.3 (10th Cir. 1992) (citing *United States v. Jones*,

816 F.2d 1483, 1486 (10th Cir. 1987)).

When the government charges a defendant under separate statutes for the same

conduct, the test derived from *Blockburger v. United States*, 284 U.S. 299 (1932),

determines whether the crimes are the "same offense" for double jeopardy purposes.[7]

When the government charges a defendant with committing two (or more)

conspiracies, whether the charges are for the "same offense" depends on whether

they "are in fact based on a defendant's participation in a single conspiracy."  *United*

---

[6] Mr. Leal argues that once the defendant advances a non-frivolous claim of double jeopardy, the burden shifts to the government to show "by a preponderance of the evidence, that the conspiracies alleged in the two indictments are in fact separate."  Aplt. Br. at 15 (citing *United States v. Beachner Const. Co., Inc.*, 555 F. Supp. 1273, 1275 (D. Kan. 1983); *United States v. Jabara*, 644 F.2d 574 (6th Cir. 1981)).  At least one other circuit has adopted this burden-shifting framework.  *See United States v. Jones*, 858 F.3d 221, 225 (4th Cir. 2017).  But we have adhered to the rule that the defendant bears the burden of showing a double jeopardy violation. *See United States v. Trammell*, 133 F.3d 1343, 1349 (10th Cir. 1998) ("A defendant bears the burden of proving double jeopardy."); *United States v. Quinonez-Quintero*, 573 F. App'x 674, 676 (10th Cir. 2014) (unpublished) ("[U]ncertainty is insufficient given that Quinonez-Quintero bears the burden of proof.")

[7] The *Blockburger* test asks whether crimes charged under different statutes for the same conduct "require[] proof of an additional fact which the other does not." 284 U.S. at 304.  If not, double jeopardy bars prosecution under both statutes.  *See id.*

11

*States v. Daniels*, 857 F.2d 1392, 1393 (10th Cir. 1988). If so, double jeopardy "bars the second prosecution." *Id.*

When, as here, a defendant claims that a second conspiracy charge is for the same conspiracy as the first conspiracy charge and therefore is a double jeopardy violation, "the court must determine whether the two transactions [alleged in the charges] were interdependent and whether the [co-conspirators] were 'united in a common unlawful goal or purpose.'" *Mintz*, 16 F.3d at 1104 (quoting *Sasser*, 974 F.2d at 1550). As we said in *United States v. Daily*, 921 F.2d 994 (10th Cir. 1990), "[T]he focal point of the analysis is whether the alleged co-conspirators were united in a common unlawful goal or purpose. . . . Of principal concern is whether the conduct of the alleged co-conspirators, however diverse and far-ranging, exhibits an interdependence." *Id.* at 1007 (citations omitted).

Interdependence requires a "shared, single criminal objective, not just similar or parallel objectives between similarly situated people." *Evans*, 970 F.2d at 671. A shared objective is present when "the activities of [the] alleged co-conspirators in one aspect of the charged scheme were necessary or advantageous to the success of the activities of co-conspirators in another aspect of the charged scheme, or the success of the venture as a whole." *Daily*, 921 F.2d at 1007; *see also United States v. Hopkins*, 608 F. App'x 637, 644 (10th Cir. 2015) (unpublished) (holding six robberies did not form one global conspiracy absent evidence each individual robbery "benefitted from or depended upon

12

the success of" the other robberies).[8]  In *Sasser*, we said the evidence must "show that the [first] conspiracy was designed to further and to promote the success of the [second] conspiracy."  974 F.2d at 1550.  It is not enough that "participation in one conspiracy provided [the defendant] with funds to participate in another."  *Id*.

If two conspiracies have a shared objective, they need not involve all the same co-conspirators or occur at the same time to be interdependent.  In *Mintz*, 16 F.3d 1101, we held that two marijuana distribution conspiracies were interdependent for double jeopardy purposes.  *Id.* at 1106.  The conspiracies, which operated over different periods of time and in different states, shared the "ultimate goal . . . to mix the two types of marijuana for sale in New York."  *Id.*  Although the two schemes involved different people, we noted that two "core conspirators . . . coordinated the entire plan."  *Id.*

Conspiracies aimed at different ends are not interdependent.  For example, two drug distribution conspiracies tied to the same city were distinct because one involved "the transportation of marijuana out of state" while the other "involved . . . no evidence of planned nationwide transport."  *United States v. Rodriguez-Moreno*, No. 99-5120, 2000 WL 504858, at *4 (10th Cir. 2000) (unpublished).

Without direct evidence of a conspiracy's goal, courts look for commonalities in time, place, and personnel.  If two conspiracies involved the same people, occurred in the

_____

[8] Although not precedential, we find the reasoning of the unpublished cases cited in this opinion instructive.  *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

13

same place, and happened at roughly the same time, courts are more likely to find the conspiracies were interdependent.  In the foundational case of *Short v. United States*, 91 F.2d 614 (4th Cir. 1937), the Fourth Circuit held double jeopardy barred a successive conspiracy prosecution when each indictment named the defendant and the same two other individuals as co-conspirators and the conspiracy alleged in the second indictment "cover[ed] a portion of each of the periods covered by" the prior indictment.  *Id.* at 620.

By contrast, in *United States v. Ruiz*, No. 93-6124, 1993 WL 520285 (10th Cir. 1993) (unpublished), this court upheld a finding of non-interdependence when the two charged drug conspiracies "were carried out over distinct time periods, involved primarily different personnel and geographic operation, and placed defendant in quite different roles."  *Id.* at *2; *see also Sasser*, 974 F.2d at 1550 (finding no interdependence between housing fraud conspiracies in which the defendant had different roles in each scheme).  The mere presence of one common co-conspirator will not establish interdependence.  *Sasser*, 974 F.2d at 1550.

## C. *Analysis*

To aid in following the analysis, we summarize the transactions underlying each indictment:

14

| Date of Indictment | Date of Sale | Alleged Seller | Other Alleged Facilitators |
|---|---|---|---|
| 07/12/16 | 06/08/16 | Bernadette Tapia Candace Tapia | Christopher Apodaca, Brandon Candelaria, Gaspar Leal/CI |
| 08/09/16 12/20/17 | 07/25/16 | Daniel Carmona | Jose Casillas, Erika Barraza, Luis Arreola-Palma, Gaspar Leal/CI |
| 08/09/16 12/20/17 | 08/03/16 | Daniel Carmona | Jose Casillas, Erika Barraza, Luis Arreola-Palma, Gaspar Leal/CI |

The district court's finding that the Tapia and Carmona conspiracies were not interdependent was not clearly erroneous. It therefore properly denied Mr. Leal's motion to dismiss the conspiracy count of the superseding indictment because there was no double jeopardy violation. The record lacks direct evidence that the two conspiracies shared a common goal. It also lacks evidence of common time, place, or personnel. As the following discussion shows, Mr. Leal failed to meet his burden to establish a double jeopardy violation. We discern four arguments in his briefing.

1. **Common Goal**

Mr. Leal argues that the conspiracies shared a common goal. He relies on *United States v. Watson*, 594 F.2d 1330 (10th Cir. 1979), to support this inference. In that case, several co-conspirators had purchased large amounts of drugs for distribution from a single wholesaler. They argued there was no evidence they had joined the same conspiracy. *Id.* at 1339. We affirmed their conspiracy convictions, explaining that "[w]here large quantities of narcotics are being distributed, each major buyer may be

15

presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know." *Id.* at 1340.

Mr. Leal argues that his alleged co-conspirators were "major buyers" and should be presumed to have acted in conscious support of a wide-ranging drug trafficking venture. Aplt. Br. at 25. But his reliance on *Watson* is misplaced, and the record does not support his argument. The *Watson* defendants were retailers who repeatedly purchased large amounts of drugs from a single wholesaler. 594 F.2d at 1339-40. The "evidence of the volume and nature of their operations" supported an inference that they were aware of the "scope of the narcotics conspiracy." *Id.* at 1340. Here, there is no evidence that (1) Ms. Tapia or Mr. Carmona were "major buyers," (2) they obtained their drugs from the same supplier, or (3) Mr. Leal was a supplier to either of them. The record shows only that each made one sale at Mr. Leal's suggestion. This hardly supports an inference that they pursued a shared common objective or that the Tapia deal "[was] necessary or advantageous to the success" of the conspirators in the Carmona deal. *Daily*, 921 F.2d at 1007, *see Pickel*, 863 F.3d at 1255 (finding sufficient evidence of interdependence where the defendant "expressed that other co-conspirators' successes were advantageous to him").

Even if the Tapia and Carmona sellers each aspired to "distribute large amounts of narcotics, particularly methamphetamine, for profit," Aplt. Br. at 25, that would not establish they were pursuing that goal as part of a shared endeavor. Although Mr. Leal is correct that the purpose of each deal was to sell drugs to the CI, the record lacks evidence

16

that the Tapia and Carmona sellers shared that purpose with each other, and a shared

objective is a necessary predicate for interdependence. *See Evans*, 970 F.2d at 669;

*Carnagie*, 533 F.3d at 1238.[9]

2. **Common Personnel**

Mr. Leal argues that the district court erred in concluding the conspiracies

involved different co-conspirators. Because both indictments alleged Mr. Leal conspired

with "persons whose names are known and unknown to the Grand Jury," ROA at 11,[10] he

asserts the Tapia and Carmona deals could possibly have involved cooperation between

participants in both transactions apart from Mr. Leal and the CI. This shows at most that

not all of Mr. Leal's co-conspirators in each transaction are identifiable, but he has not

---

[9] Mr. Leal criticizes the district court's invocation of the "buyer-seller" rule. Aplt. Br. at 23-24. Under that rule, to establish that a drug buyer is part of a conspiracy to distribute the drugs, "the government must do more than show there were casual transactions between the defendant and the conspirators . . . or that there was a buyer-seller relationship between the defendant and a member of the conspiracy." *United States v. Ivy*, 83 F.3d 1266, 1285 (10th Cir. 1996) (citations and quotations omitted). In general, "a consumer . . . does not share the distribution objective and thus would not be part of a conspiracy to *distribute*" drugs. *Evans*, 970 F.2d at 669. Even if Mr. Leal's criticism is correct and the "buyer-seller" rule does not apply here because the CI was not a mere consumer, our interdependence analysis still applies.

[10] The superseding indictment for the Carmona deal is part of the record transferred to this court, but the indictment regarding the Tapia deal is not. We take judicial notice of the Tapia indictment as it appears on the district court's docket for *United States v. Leal*, No. 1:16-CR-03069-JB (D. N.M. July 12, 2016), ECF No. 2. *See United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (recognizing a court may take judicial notice of docket information from another court); Fed. R. Evid. 201(b)(2).

provided evidence, nor even argued, that particular individuals worked with him to make both sales happen.

The record shows there was no overlap. It shows Mr. Leal conspired with Ms. Bernadette Tapia, Ms. Candace Tapia, Mr. Apodaca, and Mr. Candelaria to arrange the Tapia deal. It shows Mr. Leal conspired with Mr. Casillas, Mr. Barrazza, Mr. Arreola-Palma, and Mr. Carmona to arrange the Carmona deal. And as noted above, the mere presence of one common conspirator—here, Mr. Leal—will not establish interdependence. *Sasser*, 974 F.2d at 1550.

To the extent Mr. Leal relies on the CI to argue the conspiracies involved common personnel, a CI's involvement in the two conspiracies does not render them one conspiracy. Indeed, Mr. Leal's agreement to help the CI buy drugs was not a conspiracy as a matter of law. *See Barboa*, 777 F.2d at 1422 (explaining that there can be no indictable conspiracy between only the defendant and a government informant). Even assuming the CI's involvement in the Tapia and Carmona deals is relevant to whether the conspiracies were interdependent, his role as a purchaser in both transactions did not on its own link the conspiracies in a shared common goal. As explained above, this case is different from *Watson*, 594 F.2d at 1338-40, where we inferred a common goal between disconnected "major buyer[s]" because they purchased (1) large quantities of narcotics from (2) a single wholesaler (3) on multiple occasions.

We agree with Mr. Leal that "excluding the involvement of the CI in the transactions does not in and of itself render the two conspiracy charges as separate."

18

Aplt. Br. at 14.  But as we said in *Sasser*, "The two conspiracies operated independently of one another, with the success of each dependent exclusively on the individual labors of its own, separate participants."  974 F.2d at 1550.

3.  **Time Overlap**

Mr. Leal argues the conspiracies overlapped in time, relying on the statement in the superseding indictment that the Carmona conspiracy began at an unknown time before July 21, 2016.  But the indictments for the two conspiracies do not allege, and the record does not show, that the conspiracies overlapped in time.  The district court found—and Mr. Leal does not contest—that he began arranging the Carmona deal on July 21, 2016, more than a month after the Tapia deal.  It may be that Mr. Leal had talked with someone—perhaps Mr. Arreola-Palma—to begin arranging the transaction before he contacted the CI on July 21.  But nothing in the record shows that an agreement had occurred before July 21, more than seven weeks after June 8, 2016, when the CI purchased meth from Ms. Tapia.[11]

---

[11] The Fourth Circuit's recent decision in *United States v. Jones*, 858 F.3d 221 (4th Cir. 2017), shows why there are two conspiracies and no double jeopardy violation in Mr. Leal's case.  Mr. Jones pled guilty to a drug conspiracy charge alleging that he and two others conspired from June to August 2012 to purchase cocaine from a DEA CI.  Then, on July 24, 2014, he was indicted for conspiring with the same two people and others to operate a "vast drug trafficking organization" from 1998 to 2012.  *Id.* at 223.  The "substantial if not complete" overlap in the alleged conspiracies, *id.* at 224, as to "substantive violation, personnel, location, time span, and nature and scope," *id.* at 223, meant that the first conspiracy was part of the second and double jeopardy barred the second prosecution.  *Id.* at 230.

By contrast, the overlap between the Tapia and Carmona deals was minimal.  Both involved drug sales to the CI that Mr. Leal arranged, but there was no evidence

4. **Rule 404(b) Evidence**

Mr. Leal argues the conspiracies were interdependent because the Government intends to introduce evidence of the Tapia deal during the Carmona trial "as proof of the conspiracy alleged" in the Carmona superseding indictment. Aplt. Br. at 21. He notes that the Government has stated it will call the same witnesses it called in the Tapia trial. The evidence the Government intends to introduce, he argues, shows that Mr. Leal "repeatedly assisted in procuring methamphetamine from chains of co-conspirators for the CI . . . whom Mr. Leal believed would then further distribute it." *Id.* at 24.

By way of background, the Government filed a pretrial notice in the Carmona case that it planned to offer (1) evidence of Mr. Leal's prior efforts to arrange drug transactions with the CI, (2) video and audio recordings of the meth purchases the CI made in May and June of 2016 and physical evidence of the drugs that were purchased, and (3) a PowerPoint presentation during its opening statement that included slides about the Tapia deal. The notice cited Rule 404(b) of the Federal Rules of Evidence[12] and

the sellers knew each other or shared a common purpose. There was no time overlap—the Tapia deal ended on June 8, 2016, and the Carmona deal began on July 21, 2016. Although the relationship between Mr. Leal and the CI straddled the two transactions, their working relationship cannot form a conspiracy as a matter of law. *See Barboa*, 777 F.2d. at 1422.

[12] Under Federal Rule of Evidence 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But under Rule 404(b)(2), "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

explained that this evidence "makes it more probable that the defendant conspired to distribute methamphetamine and aided and abetted the distribution of methamphetamine in the instant matter." ROA at 18-19. The Government added that Mr. Leal's prior conduct "shows a common plan by the defendant to arrange drug deals from jail." *Id.* at 20. And it paraphrased Rule 404(b) that the evidence would show Mr. Leal's "knowledge and the absence of mistake or accident." *Id.* at 18.

Even if this evidence were admissible under Rule 404(b), neither the evidence nor the Government's plan to present it establishes interdependence. As noted above, interdependence must be based on a showing of a common goal, *Evans*, 970 F.2d at 671, and that the activities in one aspect of the scheme—here, the Tapia deal—were necessary or advantageous to the other aspect of the scheme—the Carmona deal, *Daily*, 921 F.2d at 1007. The Government's attempt to show common plan, knowledge, and lack of mistake or accident under Rule 404(b) may show that Mr. Leal handled the deals in a similar manner, but it does not show the conspiracies were interdependent.[13] Indeed,

---

[13] In *United States v. Booth*, 673 F.2d 27 (1st Cir. 1982), the First Circuit rejected a similar argument that two conspiracies were actually one for double jeopardy purposes:

> [A]lthough evidence of the Maine conspiracy was introduced at the trial of the Florida conspiracy, this evidence was introduced for the limited purpose of demonstrating intent and knowledge through evidence of subsequent similar acts. The evidence was not introduced to show a continuing conspiracy in Maine. Admission of evidence to show intent is permitted by Rule 404(b) of the Federal Rules of Evidence.

21

apart from the Government's pretrial notice under Rule 404(b)(2), Mr. Leal has attempted

to rely on the Tapia deal evidence to establish interdependence, but as the foregoing

discussion shows, he has failed to do so.[14]

---

*Id.* at 30.  The court affirmed the district court's denial of a motion to dismiss the conspiracy count in the Maine indictment.

[14] At oral argument, counsel for Mr. Leal identified a fifth argument for interdependence:  We should not allow the participation of the CI, as opposed to a private citizen, in both transactions to prevent a finding of interdependence. Otherwise, the government could use CIs to manufacture separate conspiracies and take advantage of sentencing enhancements for repeat offenders under 21 U.S.C. § 851.  *See* Oral Arg. at 12:30-13:38.  This argument is unavailing for two reasons.

First, Mr. Leal did not advance it in his opening brief.  In the brief, he argued that the Government had "filed the separate indictments in a transparent attempt to side-step the constitutional provision against double jeopardy," Aplt. Br. at 26, and "attempt[ed] to nullify the constitutional prohibition against double jeopardy by artful forms of criminal pleading," *id.* at 27.  But he did not further develop this argument in his opening brief and did not mention sentencing enhancements.  At oral argument, Mr. Leal's counsel raised for the first time the risk of the Government using CIs to manufacture separate conspiracies to take advantage of sentencing enhancements.  That argument is therefore waived.  *See United States v. Dahda*, 852 F.3d 1282, 1292 n.7 (10th Cir. 2017), *aff'd*, 138 S. Ct. 1491 (2018) ("[I]ssues raised for the first time at oral argument are considered waived." (quotations omitted)).

Second, whether the government charges two conspiracies in one indictment or in separate indictments does not affect the double jeopardy analysis.  If the conspiracies are the same, there is a double jeopardy problem in either instance.  If they are different conspiracies, there is not.  A legal basis other than double jeopardy would therefore be needed to limit the government's charging discretion based on Mr. Leal's concern about the sentencing enhancement implications of two indictments for conspiracies involving the same CI.

22

## III.  **CONCLUSION**

We affirm the district court's denial of Defendant Leal's motion to dismiss the conspiracy count of the superseding indictment.